UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

—————————————————————— x
JOSHUA R. LeBLANC, Individually and On :
Behalf of All Others Similarly Situated,       :
                                                             :
                        Plaintiff,                      :
                                                             :
         vs.                                               :
                                                             :
AGRIA CORPORATION, GUANGLIN LAI, :
KENNETH HUA HUANG, GARY KIM        :
TING YEUNG, ZHAOHUA QIAN, ZHIXIN :
XUE, GEOFFREY DUYK, and BROTHERS :
CAPITAL LIMITED,                               :
                                                             :
                        Defendants.                   :
                                                             :
—————————————————————— x

Civil Action No. 08- CV - 3886

CLASS ACTION COMPLAINT FOR
VIOLATION OF THE FEDERAL
SECURITIES LAWS

DEMAND FOR JURY TRIAL

Plaintiff makes the following allegations, except as to allegations specifically pertaining to plaintiff and plaintiff's counsel, based upon the investigation undertaken by plaintiff's counsel (which investigation included analysis of publicly available news articles and reports, public filings, securities analysts' reports and advisories about Agria Corporation. ("Agria" or the "Company"), press releases and other public statements issued by the Company, and media reports about the Company) and believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.    This is a federal securities class action on behalf of a Class consisting of all persons other than defendants who purchased the American Depository Receipts ("ADRs") of Agria pursuant and/or traceable to the Company's initial public offering on or about November 6, 2007 (the "IPO" or the "Offering") seeking to pursue remedies under the Securities Act of 1933 (the "Securities Act").

## JURISDICTION AND VENUE

2.    The claims asserted herein arise under and pursuant to Sections 11 and 15 of the Securities Act [15 U.S.C. §§77k and 77o].

3.    This Court has jurisdiction of this action pursuant to Section 22 of the Securities Act [15 U.S.C. §77v] and 28 U.S.C. §1331.

4.    Venue is properly laid in this District pursuant to Section 22 of the Securities Act and 28 U.S.C. §1391(b) and (c). The acts and conduct complained of herein occurred in substantial part in this District.

5.    In connection with the acts and conduct alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including the mails and telephonic communications and the facilities of the New York Stock Exchange ("NYSE").

## PARTIES

6.     Plaintiff Joshua R. LeBlanc purchased Agria ADRs, as set forth in the certification attached hereto and incorporated herein by reference, pursuant and/or traceable to the IPO, and was damaged thereby.

7.     Defendant Agria maintains its principal executive offices at Room 706, 7th Floor, Huantai Building, No. 12A, South Street, Zhongguancun Haidian District, Beijing, China. The Company researches and develops, produces, and sells upstream agricultural products.

8.     (a)     Defendant Guanglin Lai ("Lai") was, at all relevant times, Chairman of the Board and Co-Chief Executive Officer of Agria. Lai signed the Registration Statement.

       (b)     Defendant Kenneth Hua Huang ("Huang") was, at all relevant times, Co-Chief Executive Officer of Agria. Huang signed the Registration Statement.

       (c)     Defendant Gary Kim Ting Yeung ("Yeung") was, at all relevant times, Chief Financial Officer ("CFO") and a member of the Board of Directors of Agria. Defendant Yeung signed the Registration Statement.

       (d)     Defendant Zhaohua Qian ("Qian") was, at all relevant times, a member of the Board of Directors of Agria. Defendant Qian signed the Registration Statement.

       (e)     Defendant Zhixin Xue ("Xue") was, at all relevant times, Chief Operating Officer ("COO") and a member of the Board of Directors of Agria. Defendant Xue signed the Registration Statement.

       (f)     Defendant Geoffrey Duyk ("Duyk") was, at all relevant times, a member of the Board of Directors of Agria. Defendant Duyk signed the Registration Statement.

       (g)     Defendants Lai, Huang, Yeung, Qian, Xue and Duyk are collectively referred to herein as the "Individual Defendants."

9.    By reason of their management positions and their ability to make public statements in the name of Agria, the Individual Defendants were and are controlling persons, and had the power and influence to cause (and did cause) Agria to engage in the conduct complained of herein.

10.    Defendant Brothers Capital Limited ("Brothers Capital") is incorporated in the British Virgin Islands and is located at Palm Grove House, P.O. Box 438, Road Town, Tortola, British Virgin Islands. Brothers Capital was a selling shareholder in the IPO.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

11.    Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of himself and all persons other than defendants who purchased the ADRs of Agria pursuant and/or traceable to the Company's IPO. Excluded from the Class are defendants herein, members of the immediate family of each of the defendants, any person, firm, trust, corporation, officer, director or other individual or entity in which any defendant has a controlling interest or which is related to or affiliated with any of the defendants, and the legal representatives, agents, affiliates, heirs, successors-in-interest or assigns of any such excluded party.

12.    The members of the Class are so numerous that joinder of all members is impracticable. Agria sold more than 17 million shares of common stock in the IPO. The precise number of Class members is unknown to plaintiff at this time but is believed to be in the thousands. In addition, the names and addresses of the Class members can be ascertained from the books and records of Agria or its transfer agent or the underwriters to the IPO. Notice can be provided to such record owners by a combination of published notice and first-class mail, using techniques and a form of notice similar to those customarily used in class actions arising under the federal securities laws.

13.    Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff has retained competent counsel experienced in class action litigation under the

federal securities laws to further ensure such protection and intends to prosecute this action vigorously.

14.     Plaintiff's claims are typical of the claims of the other members of the Class because plaintiff and all the Class members' damages arise from and were caused by the same false and misleading representations and omissions made by or chargeable to defendants. Plaintiff does not have any interests antagonistic to, or in conflict with, the Class.

15.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the Class members to seek redress for the wrongful conduct alleged. Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

16.     Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by defendants' acts as alleged herein;

(b)     whether the Prospectus and Registration Statement issued by defendants to the investing public in connection with the IPO negligently omitted and/or misrepresented material facts about Agria and its business; and

(c)     the extent of injuries sustained by members of the Class and the appropriate measure of damages.

## SUBSTANTIVE ALLEGATIONS

17.    Defendant Agria engages in the in research and development, production and sale of upstream agricultural products in the People's Republic of China.  Agria offers corn seeds, sheep breeding products, and seedling products.  It processes and packages corn seed products and sells them to local and regional distributors.

18.    Agria conducts substantially all of its operations in China through its contractual arrangements with a consolidated affiliated entity, Primalights III Agriculture Development Co., Ltd. ("P3A"), and a wholly-owned subsidiary in China, Aero-Biotech Science & Technology Co., Ltd. ("Agria China").

19.    P3A is a consolidated affiliate of the Company which conducts Agria's corn seed, sheep breeding and seedling businesses and holds the requisite licenses and permits for these businesses in China. P3A has four record shareholders: Ms. Juan Li, who is the wife of defendant Lai, and defendant Qian, who together hold 70% of the equity interests of P3A; and Defendant Xue and Mr. Mingshe Zhang, who together hold the remaining 30% of the equity interests of P3A. Agria's relationship with P3A and its shareholders is governed by the contractual arrangements entered into between Agria's wholly-owned subsidiary in China and P3A and its shareholders.

20.    On or about November 5, 2007, Agria filed with the Securities and Exchange Commission ("SEC") a Form F-1/A Registration Statement (the "Registration Statement"), for the IPO.

21.    On or about November 7, 2007, the Prospectus (the "Prospectus") with respect to the IPO, which forms part of the Registration Statement, became effective and 17,150,000 ADRs of Agria were sold to the public at $16.50 per ADR, thereby valuing the total size of the IPO at more than $282 million. 12,000,000 of the ADRs sold in the IPO were sold by Agria, while 5,150,000 of the ADRs were sold by Brothers Capital.

- 5 -

22.    The Registration Statement and Prospectus contained untrue statements of material

facts, omitted to state other facts necessary to make the statements made not misleading and were not

prepared in accordance with the rules and regulations governing their preparation.

23.    In describing the corporate structure, the Prospectus explains how crucial P3A is to

Agria's corn seed, sheep breeding and seedling businesses. The Prospectus stated in pertinent part as

follows:

> People's Republic of China ("PRC") law currently prohibits a foreign entity or
> person from owning over 50% of any seed development and production business in
> China. We conduct our corn seed, sheep breeding and seedling businesses through
> contractual agreements with our consolidated affiliated entity, P3A, which holds the
> requisite licenses and permits for these businesses. Our contractual arrangements
> with P3A and its shareholders enable us to:
>
> - *exercise effective control over P3A*;
>
> - receive substantially all of the earnings and other economic benefits from
>   P3A to the extent permissible under PRC law in consideration for the
>   services provided by Agria China; and
>
> - have an exclusive option to purchase all or part of the equity interests in P3A
>   in each case when and to the extent permitted by PRC law.  [Emphasis
>   added.]

24.    The statements referenced above in paragraph 23 were inaccurate statements of

material fact because Agria did not exercise effective control over P3A.  As referenced in its

Prospectus, Agria essentially receives all its revenue from corn seeds, sheep breeding and seedlings,

which are products that P3A provides. Accordingly, P3A maintained substantial control over Agria

and was in a position to demand additional compensation from Agria, at any point, in order to

continue to maintain its relationship.

25.    The Prospectus also describes how vital each member of management is in terms of

the Company's success. The Prospectus stated in pertinent part as follows:

> *Our business depends substantially on the continuing efforts of our management,*
> *and our business may be severely disrupted if we lose their services.*

*Our future success depends significantly upon the continued services of our management, especially in the case of our primary operating entity, P3A.* We rely on our management's experience in product development, business operations, and sales and marketing, and on their relationships with distributors and relevant government authorities. *If one or more of our key management personnel are unable or unwilling to continue in their present positions, we may not be able to replace them easily or at all.* The loss of the services of our key management personnel, in the absence of suitable replacements, could have a material adverse effect on our operations and financial condition, and we may incur additional expenses to recruit and train personnel. Each member of our management team has entered into an employment agreement with us, which contains confidentiality and non-competition provisions. If disputes arise between our management and us in light of the uncertainties within the PRC legal system, there is a risk that some of the provisions of these agreements may not be enforced or enforceable in China, where our managers reside and hold most of their assets. [Emphasis added.]

26.    The statements referenced above in paragraph 25 were inaccurate statements of material fact because they failed to disclose that, at the time of the IPO, the Company was in a dispute with defendant Xue and certain other members of P3A's management team over the amount of compensation owed to P3A from their contractual agreement and was therefore at risk of losing a member of its management.

27.    Under applicable SEC rules and regulations governing the preparation of the Registration Statement and Prospectus, the Registration Statement and Prospectus were required to disclose that, at the time of the IPO, the Company was already running the risk of potentially damaging its relationship with P3A and losing a member of its management team, thereby adversely affecting its financial success. The Registration Statement failed to contain any such disclosure.

**Post-Offering Events**

28.    On February 25, 2008, Agria announced its expected revenue guidance for the fourth quarter of 2007 and full year of 2008. In that regard, Agria expected revenue in the first quarter of 2008 to be approximately 15% above the first quarter of 2007, or approximately RMB 136 million (US$ 17.9 million). Defendant Huang, commenting on the revenue guidance, stated, in pertinent part, as follows:

- 7 -

We are pleased with the success in our business and continue to expect we will achieve annual revenue growth above 25% in 2008 compared to 2007 based on current order forecasts and market expectations.

The February 25, 2008 press release further concealed the true problems that were presently occurring at the Company.

29.    Then, on April 7, 2008, after the close of the market, the Company issued a shocking press release entitled, "Zhixin (Frank) Xue Resigned as COO of Agria; Xue Will Remain Chairman of Primalights III Agriculture Development, Co., Ltd." The Company announced the resignation of defendant Xue and the delay of the filing of its Annual Report. The press release, in relevant part, stated:

Agria Corporation (NYSE:GRO - News) (the "Company" or "Agria"), an innovative China-based agri-solutions provider, today announced the resignation of Zhixin (Frank) Xue from his positions at the Company, effective April 1, 2008. Prior to his resignation, Mr. Xue had served as the Company's chief operating officer ("COO") since June 2007 and as a director since August 2007. Mr. Xue will remain as the chairman and authorized legal representative of Primalights III Agriculture Development, Co., Ltd. ("P3A"), Agria's primary operating entity in China. Mr. Xue has indicated his intention to continue working with Agria in further developing P3A's business.

On March 26, 2008, Mr. Xue informed the Company's Board of Directors (the "Board") that he intended to resign from his positions at the Company. Under the Company's corporate governance guidelines, the Board may accept or reject the resignation request of any director and/or officer. The Board rejected Mr. Xue's resignation request on March 31, 2008 and gave Mr. Xue 24 hours to make a final decision. Mr. Xue did not respond to the Board within 24 hours. Consequently, effective April 1, 2008, Mr. Xue ceased to be the COO and a director of the Company.

Mr. Xue is also the chairman and authorized legal representative of P3A and has been primarily responsible for the management of P3A's operations since its inception in 2000. Mr. Xue's positions at P3A remain unchanged.

The Board will begin the process of considering candidates to fill the COO position. **There is no assurance that the Company will be able to find a qualified COO easily or at all or that upon recruiting a new COO, such person will be able to work with members of P3A management effectively and successfully. In addition, if Mr. Xue and/or other management personnel of P3A decide to resign from P3A in the future as a result of the conditions set forth by the**

**Special Committee (as described below) or otherwise, the loss of their services in the absence of suitable replacements would have a material adverse effect on the Company's business, financial condition and results of operations.** In such an event, the Company would also incur additional expenses to recruit and train new personnel.

Separately, the Company's independent auditors have been unable to begin their audit of the Company's financial statements for 2007. Given the substantial delay in the commencement of the audit process, there is a risk that the Company may not be able to file its Annual Report on Form 20-F for the fiscal year ended December 31, 2007 by June 30, 2008. **The Company is retracting its prior guidance for the fourth quarter of 2007 and first quarter and full year of 2008 as provided in a press release on February 25, 2008.**

II. Background of Resignation

In late January 2008, the Board learned that Mr. Lai and Mr. Xue had been discussing payment of $18 million in cash and transfer of shares (which represent 22% of the Company) owned by Brothers Capital Limited ("BCL") to Mr. Xue and certain members of P3A management designated by Mr. Xue, including Mingshe Zhang, Lv Yan and Zhonglin Han, to be commensurate with their contribution to the Company and to provide equity incentive for their continuing service. BCL is solely owned by Mr. Guanglin (Alan) Lai, who is the husband of Ms. Juan Li. The payment of cash and transfer of shares by BCL to Mr. Xue and members of P3A management team is referred to in this disclosure as the "proposed transaction." Mr. Lai informed the Board that he would cause BCL to make the cash payment and transfer the shares, provided that Mr. Xue and members of P3A management would satisfy the conditions established by the Board for purposes of ensuring P3A management's continuing service and reinforcing the Company's control over P3A. Mr. Lai informed the Board that he believed the proposed payment by BCL to Mr. Xue and members of P3A management team would provide incentive for their continuing service and align their interests with those of the shareholders of the Company. **The Board was concerned about the potential adverse impact of the proposed transaction on the Company's business, financial condition and results of operations, as well as whether a similar situation may occur in the future.** On February 4, 2008, the Board approved a payment of $9 million by BCL to Mr. Xue and agreed to consider the proposed transaction at a board meeting to be held in the near future. The Board also agreed to consider the payment of the remaining $9 million by BCL to Mr. Xue within 30 days after February 4, 2008 if certain conditions were met.

At a subsequent meeting in February 2008, the Board formed a Special Committee comprised of non-executive directors to evaluate the proposed transaction and set forth conditions to be met by Mr. Xue and members of P3A management team before the cash and shares from BCL would be released. At the same meeting, BCL agreed to deposit the remaining cash and shares into an escrow account administered by a third-party banking institution.

**While the Special Committee was in the process of evaluating the proposed transaction, on March 5, 2008, Mr. Xue informed the Board that he intended to resign from his positions as the Company's COO and director because he did not receive any response from the Special Committee and did not believe the Board or the Special Committee had the ability to resolve all important matters of the Company.** The English translation of Mr. Xue's e-mail to the Board is attached hereto as Exhibit A and is incorporated by reference herein. In accordance with the Company's corporate governance guidelines, the Board may accept or reject Mr. Xue's resignation request. Accordingly, on March 7, 2008, the Board rejected Mr. Xue's resignation request. Mr. Xue agreed with the Board's decision and withdrew his resignation request on March 8, 2008. Meanwhile, Mr. Xue requested that the proposed transaction between BCL and Mr. Xue and members of P3A management be consummated in the near future.

III. Resignation

In March 2008, the Special Committee was actively discussing and finalizing the terms of the escrow agreement with BCL and considering and discussing the conditions to be met by Mr. Xue and members of P3A management team. On March 25, 2008, Mr. Xue asked the Board and the Special Committee about the status of the escrow account. On March 26, 2008, Mr. Xue missed the e-mail update regarding the status of the escrow account from the Special Committee and sent his resignation request via e-mail to the Board. In his e-mail to the Board, Mr. Xue indicated that he was disappointed with the fact that he had not received any written explanation from the Special Committee regarding the proposed transaction, and that he had not seen any concrete measures to ensure the consummation of the proposed transaction. At the request of the Special Committee, BCL placed the additional $9 million in cash and a signed blank share transfer form to transfer a total of 27,808,000 ordinary shares representing 22% of the total issued and outstanding shares of the Company, into the escrow account on March 27, 2008. Under the escrow agreement entered into between BCL and the escrow agent, an independent third party, the escrow account will automatically terminate on the earlier of June 16, 2008, or at any time prior to June 16, 2008, upon written instructions from at least a majority of the Special Committee members, and only the Special Committee members may authorize the escrow agent to release the escrowed cash and share transfer form before the escrow account terminates. A copy of the escrow agreement will be filed as an exhibit to Form 6-K containing this announcement and be incorporated by reference therein. The escrow agreement is expected to be amended to extend the final termination date to June 20, 2008. On March 31, 2008, the Board informed Mr. Xue of its decision to reject Mr. Xue's resignation request in accordance with the Company's corporate governance guidelines and gave Mr. Xue 24 hours to make a final decision. Mr. Xue did not respond to the Board within 24 hours and therefore, Mr. Xue ceased to be the chief operating officer and a director of the Company on April 1, 2008. The English translation of Mr. Xue's e-mail to the Board is attached hereto as Exhibit B and is incorporated by reference herein. Mr. Xue was provided a copy of this press release.

IV. Other Events

The Special Committee will continue to discuss conditions to be met by Mr. Xue and other members of the P3A management team before the proposed transaction can be consummated. *Payment of cash and/or shares by BCL to Mr. Xue and members of P3A management as compensation and incentive for their past and continuing services in connection with the proposed transaction will likely result in material compensation charges to the Company in the period in which the payment is made. However, these compensation charges are expected to be non-cash charges and non-dilutive to shareholders since the payment would be made by BCL, a major shareholder of the Company.* [Emphasis added.]

30.     The press release was filed as part of a Form 6-K with the SEC. Attached to the press release were two emails that defendant Xue sent to the Board of Directors. Defendant Xue's resignation letter stated, in pertinent part, as follows:

Resignation Letter

Chairman, Directors and CEO,

Up to today (March 5, 2008), the Shanxi team have overcome many difficulties and fully fulfilled its responsibilities in accordance with the requirements of the Board of Directors. In the meantime, the Board of Agria has neither substantively or effectively enforced its decision made at the February 4, 2008 meeting involving the substantial interest of the Company nor fulfilled its promise with the binding timeline. *The result of the above facts fully indicates that it has lost the trust of the Shanxi team, and also inevitably makes people question the seriousness of its decision and its ability to resolve all important internal and external matters of the Company.*

Based on the facts including but not limited to the above, *I also personally do not think that the current composition of the Board is reasonable, could effectively strengthen the Company's corporate governance or has the ability to make independent judgment, which makes it unable to fully protect the ultimate interests of the Company and all shareholders. As a result, I have requested many times orally or in writing to restructure the Board of Agria.*

After thorough and careful consideration, I have no reason to persuade myself to continue to serve as the director and senior management of the Company. In light of this, I hereby resign my position as the director and the COO of Agria, effective today, for which I only express my deep regret.

I hereby once again thank you everyone for your past cooperation and support at work.

Best regards,

- 11 -

Zhixin Xue

March 5, 2008

31.    Defendant Xue's follow up letter to his resignation letter stated, in pertinent part, as

follows:

Chairman, Directors and CEO,

The March 25 deadline for Agria's Board of Directors and the Special Committee to solve the problem regarding the share and cash transfer to P3A team has passed. I didn't receive any formal written explanation from the Board or the Special Committee before such deadline as to why the promise wasn't fulfilled, nor did I receive any legally binding protection measures relating to the share and cash transfer under these circumstances. I am deeply disappointed with this. *In the meantime, I have no doubt that Agria's Board needs to be restructured in order to strengthen the Company's corporate governance.* I submitted my resignation request to the Board on March 5, 2008, but subsequently temporarily withdrew the resignation out of my respect for the Board and good wishes toward Agria. Now that the established facts have convinced me that my previous resignation was a right decision. After careful consideration, I hereby announce that I resign my position as the director and the COO of Agria, effective immediately.

Best regards,

Zhixin Xue

March 26, 2008

32.    As of the date of the filing of this complaint, Agria ADRs are trading at

approximately $4.35 per share.

## COUNT I

### Violations of Section 11 of the Securities Act
### Against All Defendants

33.    Plaintiff repeats and realleges each and every allegation contained above.

34.    This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. §77k,

on behalf of the Class, against all defendants.

35.    The Registration Statement for the IPO was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

36.    Agria is the registrant for the IPO. The defendants named herein were responsible for the contents and dissemination of the Registration Statement and the Prospectus.

37.    As issuer of the ADRs, Agria is strictly liable to plaintiff and the Class for the misstatements and omissions.

38.    None of the defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement and the Prospectus were true and without omissions of any material facts and were not misleading.

39.    By reasons of the conduct herein alleged, each defendant violated, and/or controlled a person who violated, Section 11 of the Securities Act.

40.    Plaintiff acquired ADRs of Agria pursuant to the Registration Statement.

41.    Plaintiff and the Class have sustained damages. The value of the ADRs of Agria have declined substantially subsequent to and due to defendants' violations.

42.    Less than one year has elapsed from the time that plaintiff discovered or reasonably could have discovered the facts upon which this complaint is based to the time that plaintiff filed this Complaint. Less than three years elapsed between the time that the securities upon which this Count is brought were offered to the public and the time plaintiff filed this Complaint.

## COUNT II

### Violations of Section 15 of the Securities Act
### Against the Individual Defendants

43.    Plaintiff repeats and realleges each and every allegation contained above.

44.    This Count is brought pursuant to Section 15 of the Securities Act against the Individual Defendants.

45.    Each of the Individual Defendants was a control person of Agria by virtue of his position as a director and/or senior officer of Agria. The Individual Defendants each had a series of direct and/or indirect business and/or personal relationships with other directors and/or officers and/or major shareholders of Agria.

46.    Each of the Individual Defendants was a culpable participant in the violation of Section 11 of the Securities Act alleged in Count I above, based on their having signed the Registration Statement and having otherwise participated in the process which allowed the IPO to be successfully completed.

### PRAYER FOR RELIEF

**WHEREFORE**, plaintiff, on behalf of himself and the Class, prays for judgment as follows:

A.    declaring this action to be a plaintiff class action properly maintained pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure;

B.    awarding plaintiff and other members of the Class damages together with interest thereon;

C.    awarding plaintiff and other members of the Class their costs and expenses of this litigation, including reasonable attorneys' fees, accountants' fees and experts' fees and other costs and disbursements; and

D.    awarding plaintiff and other members of the Class such other and further relief as may be just and proper under the circumstances.

### JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

- 14 -

DATED: April 24, 2008

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
MARIO ALBA JR.


_____
            SAMUEL H. RUDMAN

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

ADEMI & O'REILLY, LLP
GURI ADEMI
3620 East Layton Ave.
Cudahy, WI  53110
Telephone:  866/264-3995
414/482-8001 (fax)

*Attorneys for Plaintiff*

- 15 -

## PLAINTIFF'S CERTIFICATE

I, Joshua R. LeBlanc ("Plaintiff"), declare, as to the claims asserted under the Federal Securities laws, that:

1.  Plaintiff has reviewed the complaint against Agria Corporation, and certain other defendants, and authorizes its filing.

2.  Plaintiff did not acquire the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3.  Plaintiff is willing to serve as a representative party on behalf of a class, including acting as a Lead Plaintiff and providing testimony at deposition and trial, if necessary.

4.  Plaintiff represents and warrants that he is fully authorized to enter into and execute this certification.

5.  Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as approved by the court.

6.  In addition, Plaintiff has made no transaction(s) during the Class Period in the securities of Agria Corporation, except those set forth below (attach additional sheets if necessary):

| Purchases | | | | Sales | | |
|---|---|---|---|---|---|---|
| Date(s) | Number of Shares | Price | | Date(s) | Number of Shares | Price |
| 2/26/2008 | 50 | $9.44 | | | | |
| 4/8/2008 | 75 | $5.31 | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

7.  During the three years prior to the date of this Certification, Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws except if detailed as follows: _____N/A_____

I declare under penalty of perjury, under the laws of the United States, this fourteenth day of April, 2008 that the information above is accurate.

_____
Joshua R. LeBlanc